535 So.2d 815 (1988)
STATE of Louisiana, Appellee,
v.
Daniel Gray BRYAN, Appellant.
No. 19783-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
*816 James D. Sparks, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
Defendant Daniel Gray Bryan, manager and co-owner of the now-defunct Dan Bryan Chevrolet-Buick, Inc. dealership in Farmerville, was originally charged with four counts of theft of dealership property. After an amended bill charged him with 21 counts of theft, 7 under $500 and 14 over $500, Bryan bargained to plead nolo contendere to one count of theft over $500 which tracked 20 of the 21 counts in the amended bill. The 20 "counts" totaled over $58,000. The things of value alleged to have been stolen from the dealership included cash, trade-in vehicles, TV sets taken from vans in inventory, materials and employee labor.
Bryan was sentenced to five years at hard labor, suspended upon payment of a $2,500 fine and costs, and was placed on supervised probation for four years, conditioned in part on his paying $74,487.52 in restitution to the other three owners of the dealership. This amount, payable over 42 months, includes $44,487.52 as the value of the property taken and $30,000 for inconvenience, humiliation, embarrassment and grief.[1]
Bryan contends the amount of restitution is excessive because:
he did not admit guilt when he pleaded nolo contendere, the record does not otherwise show that his actions constituted criminal conduct, and the plea agreement calls for restitution for losses resulting from criminal but not civil responsibility;
the $30,000 for nonpecuniary loss was not part of the plea agreement and is not factually supported in the record;
the court did not give him credit for payments he is making to these victims under his reorganization plan in bankruptcy court; and
he does not have the means to pay the amount ordered.
Bryan also contends that any restitution would be owed to the dealership corporation and not to the individual stockholders as the court ordered.
We consider Bryan's contentions under headings which follow. We amend to reduce the restitution obligation, and as amended, affirm the sentence.

THE PLEA AGREEMENT
The memorandum of plea negotiations contains Bryan's tender of a plea of nolo contendere to "one count of theft in excess of $500, encompassing all matters set forth in Exhibit 1." Exhibit 1 lists property descriptions and values for 20 of the 21 counts in the amended bill. The remaining *817 count was not included because the property described in that count was recovered during the investigation.
Bryan agreed to the maximum sentence for one count of theft over $500, ten years at hard labor. In return, the State agreed to recommend to the court that Bryan be given a suspended sentence and probation conditioned on restitution. The agreement left the imposition of a fine to the court's discretion.
We emphasize, in part, the essence of the agreement about restitution:
Defendant desires, and the State will permit, a hearing in which defendant may present evidence tending to mitigate the amount of restitution which may be found to be due as a result of defendant's criminal activity. The State, at such hearing, may also present evidence which may tend to rebut defendant's evidence and/or disclose other restitution which is not found in Exhibit 1.
The amount of restitution which is to be ordered as a condition of probation, if probation is granted, is to be fixed by the Court at the time of sentencing; and is to cover those matters only for which the Court finds criminal responsibility. Civil actions between the various parties concerned are now pending and/or under investigation, and matters of restitution which appear to the Court to be purely civil should be left to those proceedings....

The State's recommendation for suspended sentence and probation is motivated solely out of desire that the victims of this offense receive maximum restitution attributable to criminal acts in this matter. At the hearing requested by defendant, Exhibit 1 shall be taken as prima facie proof of the amount due, and may be enhanced by additional matters which the State may show at that time. The burden of proof shall be upon defendant to show that such amount as may be thereby established should be amended by the Court in defendant's favor, by clear and convincing evidence.
Other details were inadvertently omitted from the memorandum of plea negotiations and were read into the record before the plea was accepted. The State agreed that Bryan would have the benefit of compulsory process for the hearing to determine the amount of restitution; that upon sentencing, all pending charges against him would be dismissed and no further charges, including any charges related to sales tax owed to the State of Louisiana would be filed. The State also agreed not to file charges against his wife or children arising from the events involved in the plea.
After the plea was accepted by the court and before sentencing, Bryan waived a formal hearing on the restitution issue. The court ordered that the PSI report be supplemented "to include any sworn statements either by the State or defense ... as a possible consideration of the amount stolen."
The State filed a joint affidavit of the primary investigating police officers and the dealership co-owners giving their explanation of each transaction listed on Exhibit 1 (Items A through T, totaling $58,878.60), as well as two transactions discovered since Exhibit 1 was prepared (Item A-1 in the amount of $36,588 and Item A-2 in the amount of $6,000). Bryan filed a verified "motion" in response to the State's affidavit, giving his explanation of Items A through T. He also filed two other motions containing unsworn statements of others in support of his contentions. Bryan did not respond to the State's assertions about Items A-1 and A-2. The State then filed a rebuttal by the Assistant District Attorney to counter the contentions in the defense motions.
Bryan admitted converting to personal use some items of dealership property, but said he had either reimbursed the dealership or would have done so if the bookkeeper had asked him for reimbursement. As to other items, such as vehicles he obtained from dealership customers and then used or sold personally, he maintained either that the vehicles were never traded directly to the dealership but were simply purchased by him individually, or that he reimbursed *818 the dealership for trade-ins which he or members of his family used. The State responded that the dealership's financial records should have, but did not, reflect the claimed reimbursements. Bryan denied personally using other items and attempted to explain how disposition of these items benefited the dealership.
At sentencing, the court stated that it had thoroughly reviewed the extensive information provided by both the State and the defense. These filings mentioned, as well as the memorandum of plea negotiations, were considered by the court as a supplement to the PSI report.
The court ordered restitution in the amount of $74,487.52 and specified that $30,000 was for inconvenience, humiliation, embarrassment and grief. The remaining $44,487.52 is the total value of the 14 items for which the court expressly found restitution was owed (Items B, C, D, G, H, I, J, K, L, M, N, O, R and A-2).

RESTITUTION FOR MONETARY LOSS
When a court places a defendant on probation, it may impose any specific conditions of probation reasonably related to his rehabilitation, including a requirement that he make "reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court." CCrP Art. 895(A)(7).
If the victim has suffered any monetary loss or medical expense, the court "shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim." CCrP Art. 895.1(A). Our emphasis.
Restitution for monetary loss, now mandatory, was discretionary before Art. 895.1 was amended by Act 940 of 1984. Some of Bryan's conduct occurred before the amendment and some after. This distinction is not important at this juncture because the plea agreement clearly contemplates restitution for monetary loss attributable to Bryan's criminal conduct.
Bryan's contention that the record does not show criminal conduct for which restitution can be ordered has no merit. His plea of nolo contendere is the equivalent to an admission of guilt in this case, and differs from a guilty plea only because the nolo plea may not be used as an admission in a civil trial. CCrP Art. 552; State v. Brown, 490 So.2d 601 (La.App. 2d Cir. 1986). The plea to one count of theft over $500 clearly encompassed all but one of the 21 counts in the amended bill.
While the plea agreement states that restitution is to cover only those matters for which the court finds criminal responsibility, it also stipulates that Exhibit 1 "shall be taken as prima facie proof of the amount due, and may be enhanced by additional matters which the State may disclose [at the post-plea restitution hearing]. The burden of proof shall be upon defendant to show that such amount as may be thereby established should be amended by the Court in defendant's favor, by clear and convincing evidence."
Notwithstanding his burden, Bryan waived the contemplated hearing to determine the amount of restitution and chose to have the evidence presented by written motions, affidavits and unsworn statements. The court reviewed these filings, demonstrating familiarity with the plea agreement and evidence by finding only 14 items would be subject to the restitution obligation.
The 14 items total more than $14,000 under the State's prima facie amounts in Exhibit 1 and about $55,000 less than the total of Exhibit 1 and the two additional items asserted by the State's post-plea affidavit. Although Bryan offered no statements to counter the State's explanation of the two additional items, which total over $42,000, the court ordered restitution only for the smaller of the two ($6,000). The court clearly found some of Bryan's responses to Items A through T in Exhibit 1 sufficient to mitigate the amount of restitution since Items A, E, F, P, Q, S and T were excluded from the court's findings to support the amount of the restitution.
The State's affidavit shows that the value of Item P was included in another item and that the amount of the loss in Item K *819 was $3,128.86 rather than $5,417.86 as shown on Exhibit 1. The court excluded Item P but included Item K, without reducing its value by $2,289 as conceded by the State. In view of the State's concession, we shall therefore reduce the restitution ordered, by $2,289 to $42,198.52.

RESTITUTION FOR NONPECUNIARY LOSS
Victim impact statements supplementing the PSI report show that Bryan and three other individuals each owned ¼ of the stock in the incorporated dealership. The other stockholders described a $208,000 overdraft of a corporate bank account during Bryan's tenure as president and chief operating officer which was apparently guaranteed to the bank by all four shareholders. The other three shareholders stated they had paid their own shares, as well as Bryan's share, of at least $800,000 in corporate debts which the four shareholders had personally guaranteed. They expected to recoup about half of Bryan's $200,000 plus share from payments over a ten-year period under the bankruptcy reorganization plan.
The three shareholders stated that Bryan had conveyed to them his interest in the dealership's land and building [for which they had a possible buyer], explaining that pro-rata proceeds of a proposed $335,000 sale would not fully compensate them for their payment of Bryan's share of the guarantee.
The three shareholders depleted personal savings and used personal assets as collateral for loans to pay dealership business debts. They "felt" that the dealership's former employees blamed them rather than Bryan for the loss of their jobs when the dealership closed. They expressed a desire that "the facts in this case be made public... so that Mr. Bryan will not be able to do this to anyone else again."
In considering whether Bryan's conduct caused or threatened harm, the court noted that there was no physical harm but stated:
However, as appears of record in the various documents which will be filed, the impact on the victims has been profound. This pattern of activity has led in part to the loss of the business. The Court does consider and has reviewed the bankruptcy plan as presented by counsel for the defendant, but the impact on ... the victims, the other shareholders, particularly from the standpoint of the natural loss and emotional loss, loss of pride, anxiety has been quite serious and profound.
The court assigned the following reasons for ordering Bryan to pay the other shareholders $30,000 for inconvenience, embarrassment, humiliation and grief:
I do not have, as stated, the benefit of a full contradictory evidentiary hearing as contemplated by law. The amount for the general losses of $30,000 takes into consideration that there may be amounts over and above that delineated in those items I referred to that may be the subject of theft. On the other hand, some of these items may not actually, clearly and completely, if gone to a trial on the merits, be the items of theft beyond a reasonable doubt and the impact on the victims is, in fact, greater than perhaps any figure would show.
Before addressing Bryan's complaints on this issue, we note, parenthetically and on our own motion, that the law on restitution for nonpecuniary losses has been changed several times since 1983, the earliest date mentioned in the amended bill. During 1983 and until September 3, 1984, CCrP Art 895.1 allowed a court to order as a condition of probation "restitution for any loss or inconvenience which the victim may have suffered." Restitution for nonpecuniary loss was upheld either under this language in Art. 895.1 or under the reference of Art. 895 to "restitution for damage or loss caused by [the] offense." See State v. Alleman, 439 So.2d 418 (La.1983); State v. Spell, 461 So.2d 654 (La.App. 1st Cir.1984); and State v. Olsen, 496 So.2d 1260 (La.App. 1st Cir.1986).
Art. 895.1(A) was amended by Act 940 of 1984, effective September 3, 1984, to make restitution for the victim's monetary loss a mandatory condition of probation, "in a reasonable sum not to exceed the actual *820 pecuniary loss to the victim." This amendment did not authorize restitution for nonpecuniary loss.
The legislature reinstated the prior authority for restitution for the victim's "loss and inconvenience" by Act 863 of 1985, effective July 23, 1985, but made it discretionary, in paragraph B of Art. 895.1:
When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following: ...
(5) To the victim to compensate for his loss and inconvenience. Such amount may be in addition to any amounts ordered to be paid by the defendant under Paragraph A herein [mandatory restitution in a sum not to exceed the victim's actual pecuniary loss].
The 20 transactions in the amended bill included in Bryan's plea to one count of theft were alleged to have occurred "during the years 1983, 1984, and 1985." The post-plea filings give no dates for some items, and give dates for others which fall into the hiatus in the law between September 1984 and July 1985. Only two items (N and O, totaling $8,600) are clearly shown to have specifically occurred when the law allowed restitution for non -pecuniary losses.
A criminal offense is punishable according to the statutory penalties in effect when the offense was committed. A law which thereafter increases the penalty to something greater than it was when defendant committed the offense cannot be applied in lieu of the prior lesser penalty without running afoul of the constitutional prohibition against ex post facto laws. LSA-Const. Art. 1, § 23; State v. Curtis, 363 So.2d 1375 (La.1978); State v. Bethley, 452 So.2d 367 (La.App. 1st Cir.1984).
Even though the 1985 legislature reinstated or re-enacted a court's authority to order restitution for nonpecuniary losses, this authority was lacking during some of Bryan's conduct. The cases upholding this type of restitution involved offenses committed before Art. 895.1 was amended in 1984 to limit restitution to the victim's "actual pecuniary loss." State v. Alleman, State v. Spell, State v. Olsen, supra.
The victim impact statements from which the court found profound anxiety and emotional loss describe a significant bank overdraft during Bryan's management of the dealership as well as his failure to pay his guaranteed "share" of the corporate debts after the corporation became insolvent. These two circumstances may expose Bryan to civil liability, but they are not, under this record, part of his criminal conduct. The plea agreement notes: "Civil actions between the various parties concerned are now pending and/or under investigation, and matters of restitution which appear to the Court to be purely civil should be left to those proceedings." (Emphasis in original.)
In arriving at the $30,000 figure, the court took into consideration "that there may be amounts over and above [those] delineated in those items I referred to that may be the subject of theft." Restitution for a crime with which a defendant was not charged is improper, absent proof of defendant's participation in that crime. State v. Elkins, 489 So.2d 232 (La.1986).
The plea agreement afforded the State the opportunity to present evidence of theft of items not included in Exhibit 1. The State used this opportunity in its post-plea affidavit. The court included the value of one additional item, but not the other, in its order for restitution of monetary loss. The State agreed that no further charges against Bryan would be filed. Under these circumstances of the law and of the facts, the court's order of restitution for nonpecuniary damage and the statement that there "may be ... [other] thefts" are too speculative to uphold under the plea agreement. We shall therefore delete the $30,000 portion of the restitution obligation.[2]

*821 CREDIT FOR PAYMENTS THROUGH BANKRUPTCY PLAN
The trial court denied as premature Bryan's request that his criminal restitution obligation be reduced by amounts he has paid or will pay to the other shareholders under the reorganization plan in bankruptcy court.
The information about the bankruptcy proceeding in this record is scant. According to a letter to the sentencing judge from the attorney representing Bryan in bankruptcy court, Bryan will pay the other shareholders $116,000 in principal with 10 percent per annum interest, in scheduled payments of more than $850 per month. According to the victim impact statements, Bryan will pay $103,000 under the bankruptcy plan, in monthly payments of interest and annual payments of two percent principal over a period of ten years, as part of the $207,000 which the three victims paid to cover Bryan's part of some corporate debts.
This record does not show how much Bryan has already paid, or that the bankruptcy payments are for the same items on which the criminal restitution is based. It appears that most of the bankruptcy restitution plan represents civil obligations. If Bryan is later able to show duplications by competent evidence, he may, in a later hybrid action, ask the court to modify or adjust his restitution obligation(s). See CCrP Art. 896. We find no error in the trial court's conclusion that Bryan's request for credit is premature at this juncture.

MEANS TO PAY
CCrP Art. 895.1(A) allows the court discretion to order restitution either in a lump sum or in monthly installments based on a defendant's earning capacity and assets. The court allowed Bryan between 30 and 42 months to make the restitution payments.
The State asserts in its brief that Bryan is now working in Monroe, near his home in Farmerville, rather than in Dallas as he was at the time of sentencing. Because this, or any other, change in Bryan's employment may affect his income and expenses, and because we are reducing his restitution obligation, we avoid further discussion of the scant income and expense information in the PSI and shall not modify the payment term set by the trial court. If Bryan makes a good faith attempt, but fails to, liquidate the reduced obligation over 42 months, he may seek relief or modification in the trial court. CCrP Art. 896.

PAYMENT TO STOCKHOLDERS
CCrP Art. 895(A)(7) describes restitution "to the aggrieved party for damage or loss caused by [the] offense." Art. 895.1 mandates restitution "in cases where the victim or his family has suffered any monetary loss." Bryan contends the "aggrieved party" or the "victim" in this case would be the corporation which owned the stolen property and not the individual stockholders to whom the court ordered him to pay restitution.
Bryan's misappropriation of corporate property played a part in the ultimate insolvency of the corporation. The remaining stockholders have shouldered tremendous financial burdens individually since the dealership closed.[3] Although the stockholders did not technically "own" the corporate property at the time of the offenses, they became responsible for the corporate debts they personally guaranteed, and they should be entitled to receive restitution for stolen corporate assets. The trial court determined the loss of the other three shareholders and not the loss of the corporation. Under the circumstances, we can *822 agree that they are "victims" or "aggrieved parties" to whom restitution may be ordered in this case.

CONCLUSION
We amend the sentence with respect to the condition of probation by reducing Bryan's restitution obligation from $74,487.52 to $42,198.52. Otherwise, the sentence, as amended, is AFFIRMED.
NOTES
[1] See Act 863 of 1985, now CCrP Art. 895.1(B), discussed hereafter.

Another condition of probation was that Bryan serve 180 days in the parish jail, on weekends or during vacation from his employment. His complaint about incarceration in an assignment of error and in his initial brief has been waived by his counsel's statements at oral argument and in a supplemental brief that the only objection to the sentence concerns the amount of restitution.
[2] In a criminal proceeding the State's burden is to prove, with specificity, facts from which ultimate conclusions may be drawn. This record is not specific as to what was stolen when the law allowed restitution for nonpecuniary loss and inconvenience. See our discussion at p. 820 about the 20 items allegedly stolen "during the years 1983, 1984, and 1985." Only two items (totaling $8,600) are shown to have been stolen during the specific time the law allowed restitution to be ordered for non pecuniary losses "during the years 1983, 1984, and 1985."
[3] We recognize that these burdens probably caused inconvenience under Art. 895.1, as amended in 1985. See fn. 2, however.