706 So.2d 604 (1998)
STATE of Louisiana, Appellee,
v.
John Christopher STEPHENSON, Appellant.
No. 30,271-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
*605 Bobby L. Culpepper & Associates by Bobby L. Culpepper, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Scott Killen, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
Defendant, John Christopher Stephenson, was charged with two counts of misapplication of payments by a contractor, in violation of LSA-R.S. 14:202.[1] Pursuant to a plea agreement, Defendant pled nolo contendere to count one and agreed to make restitution in the amount set by the trial court to the two victims related to the charged offenses and also to a third victim for whom charges had not been brought by the State. In return, the State nol prossed the second count and requested that the trial court suspend Defendant's sentence in accordance with La. C.Cr.P. art. 893.
The trial court did suspend Defendant's sentence and ordered him to serve five years probation, subject to the condition of paying restitution to his victims. The trial court *606 ordered restitution in the following amounts: (1) $82,948.20 to victim Taylor; (2) $31,292.34 to victim Brucia; and (3) $7,000 to victim Bullock. Defendant's motion to reconsider sentence was denied. Defendant appeals his sentence as being excessive. For the following reasons, we amend the amount of restitution ordered by the trial court and, as amended, affirm and remand with instructions.

FACTS
On June 28, 1993, Defendant was charged by bill of information with two counts of contractor's fraud, a violation of LSA-R.S. 14:202. At his arraignment on that day, he pled not guilty. On February 6, 1995, however, Defendant withdrew his original plea and, pursuant to a plea agreement, entered a plea of no contest to the second count. The State nol prossed count one and Defendant agreed that he would make restitution to the victims in counts one and two, respectively, the Taylors and the Brucias, and to another victim, Bullock, for whom the state had not filed charges.
Certified public accountant Melba Jones was the only witness at the restitution hearing held on July 23, 1996. Ms. Jones testified that she used bank statements and confirmations from Defendant's subcontractors and suppliers to formulate her analysis of what Defendant owed his victims. Ms. Jones' investigation, which focused on the period of October 1992 to March 1993, revealed Defendant's pattern of using for other purposes the victims' payments which were designated for the construction of their homes. Defendant's bank statements revealed that some customers, other than the named victims, who had advanced construction funds to him had more spent on their jobs than the amounts advanced. Other customers, including the named victims, had less spent on their jobs than the amounts they had advanced to Defendant. Ms. Jones assessed that Defendant owed the Taylors $82,948.70 and the Brucias $36,878.41.
Victim Sherry Taylor testified at the sentencing hearing that she and her husband entered into a contract with Defendant for the construction of a home at a cost of $161,500. Mrs. Taylor testified that she and her husband paid Defendant $147,600.02 before Defendant quit paying workers and ceased construction on the home. Of that amount, Defendant had paid only $64,473.82 to the subcontractors and suppliers. After Defendant quit the job, the Taylors discovered Defendant's failure to pay the subcontractors and suppliers with the money they had advanced to him for that purpose. The Taylors subsequently paid the subcontractors and suppliers and hired another person to complete the home. Ms. Jones assessed that the Taylors spent a total of $268,338.67 on their home.
Victim Gerard Brucia also testified at the sentencing hearing. Mr. Brucia testified that he contracted with Defendant to build a home for $109,300. Mr. Brucia proceeded to pay Defendant a sum of $58,573 before he realized that the bills related to his home were not being paid. Of that amount, Defendant had paid only $27,280.66 to the subcontractors and suppliers. From that point forward, Mr. Brucia wrote two-party checks to Defendant and to the subcontractors and suppliers to ensure that the subcontractors and suppliers were being paid. Shortly thereafter, Defendant ceased construction on Brucia's home. Mr. Brucia testified that he took over the building of the home himself, directly paying the subcontractors and suppliers. Mr. Brucia testified that he spent a total of $146,747.82 on the home.
Victim Kenneth Bullock testified at the sentencing hearing that he contracted with the Defendant to add a bathroom and remodel an existing room in his home for a price of $28,300. Bullock testified that Defendant completed the work, but did not pay the suppliers and subcontractors. Two of the subcontractors, Ruston Brick and Pearce Lumber, filed liens against Bullock for the $6,400 owed them, which Bullock paid.
At sentencing on December 27, 1996, the trial court suspended imposition of Defendant's sentence and ordered him to serve five years supervised probation, subject to conditions of restitution, and to pay $20 per month in supervision fees and to undergo financial management counseling. At the termination of probation, if restitution has been made *607 and Defendant has not been convicted of any crime, the trial court will, on Defendant's motion, set aside the conviction and dismiss the prosecution. Defendant appeals his sentence as being excessive.

DISCUSSION
In Defendant's assignments of error, he objects to the amount of restitution which he must pay the victims of his fraud. He claims that the trial court abused its discretion in setting the amount of restitution, failed to take into account Defendant's ability to pay restitution and failed to specify how payment should be made. In his motion to reconsider sentence, Defendant argued that a restitution amount of $10,000 would be proper.
La.C.Cr.P. art. 895 provides in pertinent part:
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following:
That the defendant shall:
* * * * * *
(7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court.
La.C.Cr.P. art. 895.1 provides in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain.... The restitution payment shall be made, in discretion of the court, either in lump sum or in monthly installments based on the earning capacity and assets of the defendant.
Under La.C.Cr.P. art. 895, a trial court may impose any specific condition of probation reasonably related to a defendant's rehabilitation. A condition so harsh, however, that the probationer is destined for failure serves no purpose. State v. Carey, 392 So.2d 443 (La.1981). In ordering restitution, the trial judge has discretion and his decision will not be disturbed absent an abuse of this discretion. State v. McGloster, 303 So.2d 739 (La.1974); State v. Gill, 448 So.2d 121 (La.App. 2d Cir.1984). In excessive sentence assignments, this court recognizes the wide discretion of the trial court and requires a manifest abuse of discretion be demonstrated before setting aside a sentence. State v. Square, 433 So.2d 104 (La. 1983); State v. Madison, 535 So.2d 1024 (La. App. 2d Cir.1988); State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993).
The record establishes that the Defendant and the State entered a plea bargain in which Defendant's criminal exposure was significantly reduced. As shown by defense counsel's statements for the record, the State and Defendant structured the agreement so that Defendant would plead no contest to one charge and, in return, the State would nol pros the second charge. The agreement expressly stipulated that Defendant would make restitution to the three victims in an amount set by the trial court following a restitution hearing.
At the restitution hearing, Defendant presented no evidence or witnesses. In fact, the only witness to testify was certified public accountant Melba Jones. Ms. Jones had been instructed by the district attorney's office to begin her analysis of Defendant's account with records from October 1992 and end her analysis with the records from March 1993, when the banking activity slowed as Defendant's clients ceased relationships with him. Ms. Jones testified she prepared her account analysis of Defendant by using bank statements and confirmations from suppliers. She based her findings, using what she termed the "first in / first out" method, on the payments that came into Defendant's bank account at given dates and the source of those funds. Some of the checks which came to Defendant were *608 marked by the payor indicating the specific job for which the funds were to be applied. Ms. Jones had to independently confirm checks not marked in this manner.
Ms. Jones testified that Defendant's bank records evidenced that the homeowners would make a payment and it would be deposited into Defendant's account. Those funds, however, were not always specifically used on that particular homeowner's materials and supplies or on the bills for materials and supplies related to the home. Ms. Jones discovered that there was a pattern of money being paid to Defendant by the homeowners which was not being credited for its intended purpose.
Ms. Jones calculated that the Taylors had paid Defendant a total of $147,422.52 on their home. Defendant paid suppliers and subcontractors $64,473.82 of the Taylors' money. The Taylors were, therefore, owed $82,948.70 from the Defendant. Ms. Jones also calculated that the Brucias paid Defendant $54,049.80 on their home. Defendant paid suppliers and subcontractors $17,171.39 for their work on the Brucia home. The Brucias were, therefore, owed $36,878.41 from Defendant. Mr. Bullock testified that he contracted with Defendant for the addition of a bathroom and remodeling work. Defendant completed the work and Mr. Bullock paid him the agreed price in full. Mr. Bullock, however, also had to pay two subcontractors $6,400 to satisfy liens placed on his home as a result of non-payment by Defendant.
Defendant argues that evidence submitted as proof of the amount of restitution was insufficient, listing various hypotheses as to how Ms. Jones' calculations could possibly be incorrect. Notwithstanding Defendant's assertions about what could have happened, the record reveals no indication or assertion of Ms. Jones, or the sources for her accounting, as being nonobjective or incompetent. The trial court did not abuse its great discretion by using Defendant's own verified bank records and the lien amount as the basis of the accounting figures used to determine the restitution due to the victimized families of this case. In addition, we conclude that the restitution figure is not excessive because it merely represents the amount of actual pecuniary losses suffered by the victims, as allowed by La.C.Cr.P. art. 895.1.
La.C.Cr.P. art. 895.1, however, also mandates that when restitution is imposed, the trial court will specify how the payments shall be made. State v. Stewart, 605 So.2d 648 (La.App. 4th Cir.1992). At the sentencing hearing in this case, the trial court made no such finding. Accordingly, we remand to the trial court for the purpose of determining the method of restitution payments.
Defendant further argues that he cannot be ordered to pay restitution to Mr. Bullock because the State has never charged Defendant for this crime. Restitution for a crime with which a defendant was not charged is improper, absent proof of defendant's participation in that crime. State v. Elkins, 489 So.2d 232 (La.1986); State v. Bryan, 535 So.2d 815 (La.App. 2d Cir.1988).
The record establishes that Defendant and the State worked out a plea bargain in which Defendant's criminal exposure was significantly reduced in return for his no-contest plea and his agreement to pay restitution to all three victims. The following exchange occurred between the trial judge and Defendant at the guilty plea hearing:
The Court: Mr. Stephenson, you've heard the discussion of the plea and the terms of the plea agreement. Is that your desire to plead no contest to count two of this bill of information?
Defendant: Yes, sir.
The Court: And you understand the other terms that you will make restitution for all of thecount one and count two and the unfiled charge after a determination of the amount due is made by the Court?
Defendant: Yes, sir.
In addition, Mr. Bullock testified at the sentencing hearing that he entered into a written contract with Defendant in which he agreed to pay Defendant for remodeling work to be performed on Bullock's home. Defendant completed the work and was paid the full price. Subsequently, Mr. Bullock *609 discovered that some of the subcontractors had not been paid by Defendant. Two of the subcontractors filed liens against Mr. Bullock's home and he paid $6,400 to these subcontractors in satisfaction of their liens.
The trial court ordering Defendant to make restitution to Bullock in this case was proper and not an abuse of discretion. Defendant agreed, as part of the plea agreement, that he would pay restitution to all three victims, and the trial court approved the plea agreement. Defendant may not now object to the plea agreement on appeal. In addition, the State produced sufficient evidence of Defendant's participation in the uncharged crime. We note that Mr. Bullock, according to his own testimony, only paid $6,400 to satisfy the liens filed against his home. The trial judge ordered restitution to Mr. Bullock in the amount of $7,000. The evidence does not support the amount of restitution ordered and we, therefore, amend the sentence to reduce the amount of restitution owed Mr. Bullock to $6,400.

CONCLUSION
For the above reasons, the amount of restitution as set by the trial court is amended to reduce the amount owed to Mr. Bullock to $6,400 and is otherwise affirmed. The case is remanded to the trial court for the purpose of determining the method of restitution payments.
AMENDED, AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] LSA-R.S. 14:202 provides, in pertinent part, as follows:

A. No person, contractor, or subcontractor, or agent of a contractor or subcontractor who has received money on account of a contract for the construction, erection or repair of a building, structure, or other improvement, ... shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
* * * * * *
D. Any person, contractor, subcontractor, or agent of a contractor or subcontractor who knowingly fails to apply construction payments as required in Subsection A shall pay to the court, and the court shall transfer to the person whose construction contract payments were misapplied, an amount equal to the sum of the payments not properly applied and any additional legal costs resulting from the misapplication of construction fund payments, including a fee charged by the clerk of court for handling such payments.