DREW, J.
11 James H. Shell was prosecuted for felony theft of property valued at $500 or more. La. R.S. 14:67(B)(1). In an apparent compromise verdict, the jury convicted him for committing the crime of theft of *936 property valued at more than $300 but less than $500. La. R.S. 14:67(B)(2).[1]
The defendant was sentenced to the maximum two years at hard labor, all of which was suspended. He was placed on active, supervised probation. There was no fine assessed and all probation fees were waived.
Among the conditions of his five years of probation was a requirement that he pay $20,000 in restitution to the church he victimized. We affirm the conviction, the sentence, and the amount of restitution, but with instructions.
FACTS
On March 18, 2008, members of the Mt. Sinai Baptist Church in DeSoto Parish entered into a contract[2] with Shell for him to build a fellowship hall for a total price of $43,680.[3] Less than two months into the project, just after receiving the fourth installment of $9,850, he took his tools and left the project site, never returning to complete the project. After unsuccessful attempts to locate the defendant, the church members requested that criminal charges be filed against him. An arrest warrant was issued in the summer of 2003. The defendant could not be found and the case lay dormant for years, until Arkansas authorities discovered the |2warrant, and the defendant was returned to this state to face similar charges in Webster Parish.
Sheppard Fields, treasurer of Mt. Sinai Baptist Church, testified that:
• he first came into contact with the defendant in early 2003;
• the church was interested in building a fellowship hall;
• the defendant was interested in constructing the building;
• the only written contract was an invoice from the defendant to Mt. Sinai Baptist Church;
• Shell completed neither the 40' x 60' x 14' metal building, the 60' x 10' covered porch, the restrooms, the 3-ton central air and electric heat, nor the labor, wiring, and conduit, and he did not install a 200-amp breaker;
• the contract required four $9,850 payments, in stages, and a balance of $4,280, upon completion of the project;[4]
• less than two months after the start of the project, and only three days after he gave the defendant the fourth check in May, he went to check on the project, but the defendant could not be found;
• repeated attempts to find the defendant were to no avail;
• the church even hired a private investigator, who couldn’t find him;
• at this point in the chronology, the church sought criminal charges; and
• he identified the defendant in open court.
On cross-examination, Fields testified that up until the frame was erected, everything was fine with the work the defendant was performing. He stated that it only became a problem when the defendant did not return to complete the job.
|sOn redirect, Fields testified that the defendant did not receive the last check in *937 the amount of $4,280 because he never returned to the job site.
Ward Fields testified that:
• he first met Shell in 2008 when the defendant did some work for him;
• he introduced Shell to his brother, Sheppard Fields, and the church’s pastor;
• they discussed the defendant building a fellowship hall for the church;
• every Sunday he would check on the progress of the fellowship hall;
• he became alarmed when his brother told him the defendant had gone;
• he couldn’t find the defendant at his place of business in Bossier City,
• for a month, he checked back weekly at the former place of business;
• his phone calls to Shell were not successful; and
• he identified the defendant in open court.
On cross-examination, Ward Fields testified that prior to the defendant leaving the project site, he did not hear any complaints about the defendant’s work.
M.L. George, another member of Mt. Sinai Church, testified that:
• he met the defendant in February 2008, when the defendant agreed to build the fellowship hall for the church;
• he identified the invoice/contract and the four cashed checks;
• without warning, Shell disappeared, leaving the hall far from complete;
• he unsuccessfully tried to phone and physically contact Shell, to no avail;
• he hired a private investigator, who could not find Shell; and
14* it took about three years for the sheriffs department to locate the defendant.
Toni Morris, a detective with DeSoto Parish Sheriffs Office, testified that:
• around July 2003, he investigated this incident;
• he met with M.L. George, Sheppard Fields and Ward Fields, who explained that the defendant had absconded, to the church’s financial harm;
• after meeting with these men, he drove to the church site to take photos;
• it was obvious that much of the contracted work was not performed;
• he received from the members copies of the cancelled checks that were cashed by the defendant and also a copy of the invoice/contract;
• despite his best efforts, he was unable to locate Shell;
• about 30 days later, he obtained an arrest warrant for the defendant; and
• he could not arrest Shell for several years, because he couldn’t find him.
James Shell, the defendant, testified that:
• in 2003, he owned a metal building business, Shell Buildings Systems;
• Ward Fields contacted him through an ad in a newspaper;
• his business relationship with Ward Fields was great;
• he completed the project and Ward Fields was happy with his work;
• Ward Fields introduced him to the deacons of the church;
• they entered into a contract for the construction of the hall;
• he was contracted only to do the outside work;[5]
he was not to do any work inside except to lay the pipes for plumbing;
*938 • he was only to put in a 200-amp breaker and an AC, not a central air unit;[6]
• he began work soon after they entered into the contract on March 18, 2003;
• he did not complete the job due to medical problems;
• he called Ward Fields to advise as to his medical problems, explaining that he could find someone else to complete the job for approximately $2,200;
• Ward Fields became upset and hung up;[7]
• while on the job site, no one ever had a problem with his work;
• he never intended to defraud the church or not finish the job;
• after his first heart attack, he lived with his mother right outside Shreveport;
• after she passed, he went to live with his sister in Monroe;
• he then went to Arkansas to visit friends, suffering two more heart attacks;
• he now gets a disability check;
• he had another job in Webster Parish, during the same time frame;
• because of his illness, he could not complete that job either, and wound up pleading to a misdemeanor for nine months he had already served;
• he admitted not completing the job;
• he admitted the amounts and dates of the payments he received; and
|ñ* he did not return to DeSoto Parish until the police brought him in 2008.
Though the defendant went to trial for the higher gradation of felony theft, the jury returned this responsive verdict of middle-grade felony theft.
At a restitution hearing, an experienced contractor, Jeff Heard, testified that the work defendant had completed had a value of from $9,000 to $10,000. The trial court sentenced the defendant as outlined, and a motion to reconsider sentence was denied.
DISCUSSION

I. Sufficiency

The defense argues that the state failed to provide sufficient evidence that the defendant was guilty. According to the defense, the state lacked the required proof that the defendant had the intent to commit theft or even that he committed theft. The state argues that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of theft.
In 2003, the Louisiana theft statute was straightforward.[8]
*939 Our law on a sufficiency review is well settled.[9]
17Five people testified at trial: the three church members, Det. Toni Morris, and the defendant.
The evidence presented at trial was clearly sufficient to support defendant’s conviction for theft.
At trial, the three church members testified that the defendant was hired to build a fellowship hall for Mt. Sinai Baptist Church. Under the agreement, evidenced by an invoice, the defendant agreed to construct a 40' x 60' x 14' building, a 60' x 10' covered porch, a 3' x 7' walk-through door, and male and female restrooms; he also agreed to install a central air and heating unit, wiring, and a 200-amp main breaker. For his services, Mt. Sinai Baptist Church agreed to pay the defendant $43,680. The defendant received and cashed four checks of $9,850 each. Days after cashing the | ^fourth payment, defendant gathered his equipment and left town, never to return to the project. Mt. Sinai Baptist Church members hired a private investigator to search for him, to no avail. It was years later before the law found the defendant and brought him back to face these charges.
The defendant’s testimony confirmed that he did not complete the project, and that he left town after receiving the fourth installment check. Further, although the defendant testified that he suffered medical issues which hindered him from completing the project, he did not offer any proof to support his argument. It was up to the trier of fact to determine the defendant’s credibility.
Besides his lengthy abscondment, the most telling evidence against the de *940 fendant can be discerned by simply juxtaposing the defendant’s testimony with the stark photographs of the crime scene and the invoice/contract. His unbelievable version of his partial fulfillment of the contract was patently absurd. Mr. Shell’s testimony that it was not his intent to defraud the church does not square with the evidence. Within seven weeks of the contract, the defendant had received 90% of all proceeds ultimately to be due under the entire contract, after doing about 30% of the work, at best. He gave no prior warning to any member of the church. He fled and hid, for years. This evidence of flight, only days after cashing the fourth check, establishes the defendant’s guilty knowledge and intent.[10] Although this matter initially arose out of a civil contract, the defendant’s outlandish conduct clearly crossed the line and constituted violations of ^criminal law.[11] A reasonable jury could have found him guilty, beyond a reasonable doubt.

II. Excessive Sentence

The defendant argues that:
• the trial court abused its discretion when it ordered that the defendant pay $20,000 restitution to Mt. Sinai Baptist Church;
• the church actually owed him $8,000 for additional work he performed;
• due to his health, together with his only income being disability, the restitution order makes his sentence excessive.
 Our law concerning conditions of probation is well settled.[12]
ImShell stole in excess of $20,000 from the church. It is clear, therefore, that the restitution figure is justified if looking *941 through the prism of the pecuniary loss suffered by the church.
It is also clear, however, that the defendant has only a remote chance of paying back the full restitution during the five years of his probationary period.[13]
Further, if a defendant is truly indigent, he should not be imprisoned for the failure to pay sums ordered by the court.[14]
There is a world of difference between a probationer who can’t pay, as opposed to one who just won’t pay. If the defendant is truly unable to pay the restitution, he should not be imprisoned for that failure. We do not have debtors’ prisons in the United States, even for contractors who betray the trust of a church.
Accordingly, should this matter be brought back before the trial court for a revocation hearing, we direct our brother judge below to make careful findings as to the defendant’s ability to pay[15] and to carefully consider the |uprevious paragraph.[16] If the trial court ever rules to revoke the defendant’s probation, predicated on his failure to timely pay the restitution, it is directed to grant a stay, if requested by the defendant, for him to seek supervisory appellate review of the revocation.

III. Error Patent

At sentencing, the trial court did not advise the defendant of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of this limitation at sentencing, is supplicatory language which does not bestow an enforceable right on an individual defendant.[17] The defendant is thus advised of these time limitation in the footnote below.[18]
*942 |,¡.DECREE
The defendant’s conviction, sentence, and conditions of probation are affirmed. The trial court is directed, at any future revocation proceeding, relative to the defendant’s failure to pay restitution, to make detailed findings about the defendant’s ability, vel non, to pay the sums due. Further, should the defendant’s probation ever be revoked for nonpayment of the ordered restitution, we direct the learned trial court to grant a stay of sentence, if requested, should the defendant choose to seek supervisory appellate review of any revocation.

. Sometimes referenced as "middle-grade theft.”

. Actually, a brief and informal invoice.

. Four installments of $9,850 and a final installment of $4,280.

.There is no dispute that the church issued, and the defendant cashed, four separate checks amounting to an aggregate of $39,400, out of the total $43,600 due under the contract.

. This statement raises a question relative to the sparse invoice/contract: Why is there no limitation to this effect on the document?

. This is belied by the clear wording of the invoice/contract that requires “3-ton central air, electric heat.”

. At trial, Ward Fields denied ever speaking with the defendant after the job was abandoned. Apparently, the jury believed Mr. Fields and disbelieved Mr. Shell.

. At the time of this offense, La. R.S. 14:67 provided, in pertinent part:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
(2) When the misappropriation or taking amounts to a value of three hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. See also, State v. Shivers, 43,731 (La.App.2d Cir.12/3/08), 998 So.2d 877, writ denied, 2009-0161 (La.10/30/09), 21 So.3d 274.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.

. The church members testified that no additional materials were delivered to the site after the defendant's departure.

. Essential element of crime of theft is specific intent to permanently deprive a victim of his property. State v. Albert, 1996-1991 (La.App. 1st Cir.6/20/97), 697 So.2d 1355.

. La. C. Cr. P. art. 895.1, in pertinent part, provides:
“When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from tire establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.”
Additionally, La. C. Cr. P. art. 895(A)(7) authorizes the court to impose any special conditions of probation reasonably related to the defendant’s rehabilitation, including a requirement that the defendant make “reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court.”
Generally, trial courts are afforded wide latitude in the imposition of probationary conditions, as long as the conditions are reasonably related to the rehabilitation of the individual and do not constitute excessive, cruel, or unusual punishment. See La. C. Cr. P. art. 895(A); State v. Parker, 423 So.2d 1121 (La.1982). This includes discretion in ordering restitution, and the trial court’s decision in this regard will not be disturbed absent an abuse of discretion. State v. McGloster, 303 So.2d 739 (La.1974); State v. Averette, 1999-2054 (La.App. 1st Cir.6/23/00), 764 So.2d 349; State v. Stephenson, 30,271 (La.App.2d Cir.1/21/98), 706 So.2d 604, writ denied, 98-,0426 (La.1998), 720 So.2d 1211. In excessive sentence assignments, this court recognizes the wide discretion of the trial court and requires a manifest abuse of discretion be demonstrated before setting aside a sentence. State v. Stephenson, supra.

. Paying off the assessed $20,000 over the five-year probationary term, would require a payment of $333.33 per month, which would be somewhere between harsh and impossible, for a man who is solely supported by disability payments. This record is unclear as to whether the defendant has other sources of income, so we shall leave this inquiry to any future revocation proceedings, for which we have included, in this opinion, instructions for the trial court.

. See State v. Zabaleta, 96-2449 (La.App. 3d Cir.3/7/97), 689 So.2d 1369. "An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence.” Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). "However, we note that La. C. Cr. P. art. 886 permits the state to enforce collection of a fine in the same manner as a money judgment in a civil case.” State v. Conley, 570 So.2d 1161 (La.1990). Also see State v. Duke, 2011-688 (La.App. 3d Cir.2/1/12), 84 So.3d 722.

. Defendant has been represented by counsel in this proceeding from day one. He is now represented on appeal by The Louisiana Appellate Project. We find that these facts amount to presumptive evidence of his indigent status. See State v. Devare, 03-610 (La.App. 5th Cir. 10/28/03), 860 So.2d 191.

. We are comforted by these sage comments of the trial court at sentencing: "The restitution amount is hereby fixed at a midrange of $20,000. I understand that the defendant is under a previous court order, is also under a fixed income, and he will do what he can within the terms and conditions of probation. We will evaluate it appropriately.”

. See State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, abrogated on other grounds in State ex rel. Olivieri v. State, 2000-0172 (La.2/21/01), 779 So.2d 735; State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6.

. Art. 930.8. Time limitations; exceptions; prejudicial delay
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
*942 (1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.
(2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
(4) The person asserting the claim has been sentenced to death.
B. An application for post conviction relief which is timely filed, or which is allowed under an exception to the time limitation as set forth in Paragraph A of this Article, shall be dismissed upon a showing by the state of prejudice to its ability to respond to, negate, or rebut the allegations of the petition caused by events not under the control of the state which have transpired since the date of original conviction, if the court finds, after a hearing limited to that issue, that the state's ability to respond to, negate, or rebut such allegations has been materially prejudiced thereby.
C. At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. If a written waiver of rights form is used during the acceptance of a guilty plea, the notice required by this Paragraph may be included in the written waiver of rights.