1 ?FOIL, Judge.
The defendant, Roy Averette, was charged by bill of information with two *350 counts of theft of an amount greater than $500.00, a violation of La. R.S. 14:67. The defendant originally pled not guilty, but subsequently changed his plea to guilty as charged, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the denial of his motion to quash the bill of information. After a Boykin examination, the trial court accepted the defendant’s plea. The trial court deferred imposition of sentence and placed the defendant on probation for five years with a number of special conditions. The court also ordered that the defendant pay restitution to the victims. The defendant appealed, urging two assignments of error. [1]
FACTS
Since the defendant pled guilty, the facts of the offense were not fully developed. The bill of information, the transcript of the hearing on the motion to quash, and the transcript of the restitution hearing reveal that, in St. Tammany Parish throughout 1993, Daniel Eagan gave the defendant more than $84,000 and L.B. Bis-so[2] gave the defendant over $30,000 to invest for them. The defendant was to purchase siding contracts with the money, and over a period of three or four years Eagan and Bisso were to be repaid the money they lent to the defendant plus ten percent interest. Subsequently, it was determined that the defendant did not use the money to purchase siding contracts and he did not repay the money to Eagan or Bisso. On April 22, 1996, after negotiations between the parties failed, Eagan executed an affidavit for the defendant’s arrest.
| .ORIGINAL ASSIGNMENT OF ERROR
In his original assignment of error, the defendant contends that the trial court erred in denying his motion to quash, which was based on the running of time limitations for institution of prosecution as set forth in La. Code Crim. P. art. 572. In his brief to this court, the defendant argues that the instant offenses occurred in 1993. He claims that the victims stopped giving him money in 1993, and all promissory notes were dated in 1993. The state filed a bill of information against him on June 1, 1998, which bears a typed date of June 15, 1998. Thus, he contends that more than four years passed before the state’s institution of prosecution against him. He contends that at the hearing on his motion to quash, the state argued that the time period for institution of prosecution set forth in La.Code Crim. P. art. 572 was interrupted because the defendant was absent from the state. The defendant argues that the state knew his whereabouts and he did not leave the state to avoid prosecution.
La.Code Crim. P. art. 572 provides, in pertinent part:
No person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed:
[[Image here]]
(2) Four years, for a felony not necessarily punishable by imprisonment at hard labor;
According to La.Code Crim. P. art. 573:
The time limitations established by Article 572 shall not commence to run as to the following offenses until the relationship or status involved has ceased to exist when:
(1) The offense charged is based on the misappropriation of any money or thing of value by one who, by virtue of his office, employment, or fiduciary rela *351 tionship, has been entrusted therewith or has control thereof.
^Although the state need not allege facts showing that the time limitation has not expired, once the issue is raised, the state has the burden of proving that the prosecution was timely instituted. La. Code Crim. P. art. 577.
At the hearing on the defendant’s motion to quash, Daniel Eagan testified that he and Miss Bisso[3] entered into a business relationship with the defendant in January 1993. Throughout 1993, Eagan and Bisso periodically gave the defendant money to buy siding contracts, and they were supposed to receive a ten percent return on their money. Eagan identified promissory notes given to him and Bisso in return for the money they gave the defendant, promising future repayment of the money. According to Eagan, the defendant later told him that he did not purchase siding contracts with the money they gave him, but instead used the money to buy drugs and gamble. Eagan lost touch with the defendant, but in September 1995, he met with the defendant who promised he would pay back the money and gave him a check for $200.00. According to Eagan, the check was not good. The defendant also gave Eagan additional checks for repayment of the money, but the checks were written on a checking account that had been closed. On April 22, 1996, Eagan executed an affidavit for the defendant’s arrest. According to the copies of the promissory notes included in the record, which were made out to Eagan or Bisso, the defendant promised to repay the money in monthly installments over a period of 36 or 48 months.
In denying the motion to quash, the trial court found that, based on the testimony presented, negotiations with the defendant were ongoing until April 22,1996. According to the testimony, the court found the last contact they had was possibly the last straw, and that was when Eagan filed the affidavit for arrest.
|fiWhile the defendant did obtain the money from the victims and execute promissory notes promising them repayment of the money in 1993, the defendant had an ongoing relationship with the victims wherein he negotiated with them, promised them repayment, and issued checks to them drawn on a closed bank account. Included in the documents introduced into evidence by the defendant were receipts signed by Bisso regarding cash payments made in 1995. Considering the testimony and evidence introduced at the hearing on the motion to quash, we find that the fiduciary relationship between the defendant and the victims ceased to exist on April 22, 1996, when Eagan filed an affidavit for the defendant’s arrest. Therefore, the time limitations for institution of prosecution did not begin to run until that point. See La.Code Crim. P. art. 573(1).
We cannot say that the trial court erred in denying the defendant’s motion to quash. This assignment of error is without merit.
SUPPLEMENTAL ASSIGNMENT OF ERROR
In his supplemental assignment of error, the defendant contends that the trial court erred in including future interest earnings in the amount of restitution to be awarded to the victims. In his brief to this court, the defendant argues that including the interest owed the victims as restitution resulted in the payment of an amount greater than he allegedly stole and violated La.Code Crim. P. art. 895.1. The defendant claims that there was some confusion in the victims’ testimony, but that the victims indicated that the amounts quoted to the court included the amount loaned to the defendant, plus the ten percent interest he was also supposed to pay the victims as a profit.
*352 La.Code Crim. P. art. 895.1 provides, in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum [finot to exceed the actual pecuniary loss to the victim in an amount certain.
In ordering restitution, the trial court has discretion and its decision will not be disturbed absent an abuse of this discretion. See State v. McGloster, 303 So.2d 739 (La.1974); State v. Stephenson, 30,271, p. 5 (La.App. 2 Cir. 1/21/98), 706 So.2d 604, 607, writ denied, 98-0426 (La.6/19/98), 720 So.2d 1211. In reviewing excessive sentence assignments, the sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion. State v. Lobato, 603 So.2d 739, 751 (La.1992).
During the restitution hearing, Eagan informed the court of the different amounts of money, which totaled over $84,-000, that he had given the defendant. Ea-gan testified that he gave the defendant cash and, in return, the defendant gave him promissory notes as receipts for the money. Defense counsel asked Eagan, “These promissory notes as you look at them, they don’t include interest as far as the pay back schedule is concerned; right?” Eagan responded, “Correct.” Defense counsel then asked, “That’s because the amount of interest that was calculated into this and that included the ten percent that you were going to get back?” Eagan responded, “No, sir. I had nothing to do with making those promissory notes. They were left blank. You would have to ask [the defendant] why. I did not make them; he made them and gave them to me. So why its zero, you have to ask your client.” Eagan stated that he did not know how the notes were calculated, as he only knew he was supposed to earn back his money plus ten percent. Eagan explained that the figures on the notes represented the money that he gave the defendant. The court asked Eagan if the ten percent he “expected to get back” was included in the amount on the notes. Ea-gan responded, “No, sir. That’s moneys[sic] that he received from us.”
17Eagan explained to the court that when the defendant executed the promissory notes, the defendant also gave him checks to hold. According to Eagan, “the situation with the checkfs] was that after we received our 10 percent, he was to receive 5, that [sic] after the length of the contract, we could go to the parish bank and cash the check and get [our] original investment back.” Eagan further testified that the defendant instructed him that when the contract was completed, Eagan could take the check to the bank, cash it, and get back his “original investment.” Eagan stated, “I would then get my original investment plus the ten percent.” According to Eagan, the checking account on which those checks were written was closed.
The following colloquy subsequently occurred between defense counsel and Ea-gan:
Q. As I understood your answer to the judge’s question a moment ago, you had exercised a promissory note when you gave funds to Mr. Averette and at the same time he would give you a check that at the end of the contract—
A. I would exercise a promissory note? No, sir. He would give me a promissory note and a check.
Q. Okay. And that check represented the amount of money after the contract was over. You could go to the bank and cash?
A. No, sir. That was my original investment.
Q. Well, that’s not what you just said on the record. What you just said was that he gave you a check that you could *353 take to the bank when the contract was over and cash it and that would be your money plus the ten percent.
A. That’s right. Plus ten percent.
Louise Bisso testified that she loaned the defendant $37,452. However, she explained that $5,400 of that amount was money she loaned to a friend of the defendant. The defendant did make some payments to Bisso; therefore, she testified that he owed her $34,881. According to Bisso, she and Eagan had similar payment arrangements with the defendant.
|sThe defendant testified that Eagan and Bisso loaned him money to purchase the siding contracts. He claimed a notary public supplied the promissory note and Eagan supplied “all of the figures.” The defendant claimed that each promissory note had the ten percent interest he owed figured into them. He claimed that the amount was for the full pay out of the loan and that is why the check was written for that same amount. The defendant stated that the victims were not going to cash the check because they were getting monthly payments. He claimed the amounts on the promissory notes reflected the full amount owed the victims including interest. He also claimed he made cash payments to the victims of $200 a week for three years. The defendant estimated that the victims loaned him approximately $45,000, and that he repaid them $35,000 to $40,000. Eagan testified on rebuttal that the defendant did not make cash payments to him of $200 a week.
In making its ruling, the court stated that, after hearing the testimony of the witnesses and looking at the documentation, it believed the testimony of the victims and discounted the testimony of the defendant as being “completely incredible and unbelievable.” The court determined that the defendant owed Eagan a total of $84,601, and he owed Bisso a total of $30,-606, after discounting amounts paid and the amount loaned to the defendant’s friend. The court ordered the defendant to make monthly payments to the victims during his probationary period.
Defense counsel objected to the trial court’s ruling, stating that the court “should have taken into consideration that the notes were reflective of the overall amount and not that amount that was actually lent out which is what the theft involves.” The court responded that it understood defense counsel’s objection but that it had to make a credibility call between the parties, and the victims testified that the amounts did not include the ten percent interest. According to the court, the victims were supposed to get ten percent “on top” of those amounts and the | flnotes only represented the amounts given to him “in hand at the time to go make the investment.” The court stated that it did not believe the defendant “at all.”
The promissory notes introduced into evidence do not show whether interest was included in the notes. The notes only show that no interest was to be paid. Additionally, Bisso testified that most of the money given to the defendant was in cash, but at one point she gave him a check for $7,500. She produced the cancelled check for that exact amount. At one point during Eagan’s testimony, defense counsel questioned him about whether the promissory notes included the ten percent interest, but his answer is somewhat confusing and does not clarify the situation. However, his answer does not prove that interest was included in the promissory notes. Additionally, we note that throughout his testimony, Eagan maintained that the amounts reflected in the promissory notes were the actual amounts of money that he had given the defendant.
After reviewing the record, we find no evidence that the trial court abused its discretion in determining the amount of restitution to be paid by the defendant to the victims. Both victims testified with specificity as to the actual amount of money they each gave the defendant to invest for them. The witnesses produced documentation showing the amounts owed and *354 the documents did not state that interest was included in the amounts owed. The court weighed the credibility of the witnesses and found the defendant was not credible. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 529 So.2d 466, 472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). This court will not assess the credibility of witnesses. See State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). Considering the above, we find this assignment of error to be without merit.
CONVICTIONS AND SENTENCES AFFIRMED.

. The defendant originally filed and briefed one assignment of error with this court. However, he subsequently was allowed to file and brief a supplemental assignment of error.

. According to the defendant’s testimony, Mr. Eagan and Miss Bisso lived together in the same home.

. Although the transcript of the hearing on the motion to quash spells the victim’s name as Beeson, the bill of information and documentary evidence used the spelling Bisso.