NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2020 KA 0245

STATE OF LOUISIANA

VERSUS

BRIAN MOSER

DECISION RENDERED: **DEC 3 0 2020**

* * * * * * *

APPEALED FROM THE
20TH JUDICIAL DISTRICT COURT
WEST FELICIANA PARISH, LOUISIANA
DOCKET NUMBER 16-WFLN-302

HONORABLE WILLIAM G. CARMICHAEL, JUDGE

* * * * * * *

Samuel C. D'Aquila
District Attorney
and
Stewart B. Hughes
Haley M. Green
Assistant District Attorneys
St. Francisville, Louisiana

Attorneys for Appellant,
State of Louisiana

Michael A. Fiser
Baton Rouge, Louisiana

Attorney for Defendant/
Appellee, Brian Moser

**BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.**

**McDONALD, J.**

The State filed a bill of information charging defendant, Brian Moser, with residential contractor fraud at a value of $1,500 or more, a violation of La. R.S. 14:202.1C(3) (prior to amendment by 2017 La. Acts, No. 281, §1).[1] He pled not guilty. He later withdrew his not guilty plea and pled nolo contendere to five counts of misapplication of payments by a contractor, violations of La. R.S. 14:202.[2] The trial court initially sentenced the defendant on each count to six months imprisonment in parish jail, to be served consecutively, suspended the sentences, and placed the defendant on supervised probation for two years under each count. Following a hearing to determine what amount, if any, the defendant should pay in restitution as a condition of his probation, the trial court ruled that no restitution would be ordered in connection with the defendant's sentences. The trial court denied the State's written motion for a rehearing on the restitution issue. The trial court later vacated the original sentences and imposed one sentence of a $1,000 fine, plus court costs, or a 90-day jail term in default of payment of the fine.

The State appealed, arguing the trial court erred in resentencing the defendant to terms different from the plea agreement and in ordering no restitution. Due to sentencing error, specifically, the imposition of a single sentence for five convictions, this court vacated the sentence and remanded the case to the trial court for resentencing. *State v. Moser,* 19-0277 (La. App. 1 Cir. 9/27/19), 2019 WL 4730228, *1.[3] On remand, the trial court sentenced the defendant on each count to a $1,000 fine, plus court costs, or a 90-day jail term in default of payment of the fine, to run concurrently, with credit for any previous payments.

The State now appeals, reasserting the sentencing and restitution issues raised in its original appeal. The defendant filed an appellee brief, arguing that the State's

---

[1] Based on the same set of circumstances as herein, the State filed a separate bill of information, similarly charging Merrel A. Porche, and the proceedings were joined below. The State has also appealed the sentence imposed in the *Porche* case. *See State v. Porche,* 20-0246 (La. App. 1 Cir. _/_/_), ___ So.3d ___, ___ WL ___.

[2] At the *Boykin* hearing, the trial court informed the defendant of the penalty under La. R.S. 14:202C, applicable when the amount misapplied is greater than $1,000. *See Boykin v. Alabama,* 395 U.S. 238, 243-44, 89 S.Ct. 1709, 1712-13, 23 L.Ed.2d 274 (1969).

[3] *See also State v. Porche,* 19-0278 (La. App. 1 Cir. 9/27/19), 288 So.3d 802, 803.

assignments of error are meritless. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

Due to the defendant's nolo contendere pleas, there was no trial to establish the facts of the offenses. According to the bill of information, on or about March 7, 2016, the defendant failed to apply money received under a contract to settle claims for material and labor due under that contract. At the restitution hearing, George Turner, oversight director for London Boarding Home[4] (LBH), testified that, in 2015, LBH entered into three contracts with M&P Construction Group, L.L.C. (M&P), represented by the defendant and co-defendant Merrel A. Porche, to build three houses in New Jerusalem Estates (NJE), a residential subdivision in West Feliciana Parish, Louisiana. Based on further testimony and exhibits, LBH paid M&P under the contract but later received letters from four vendors who supplied materials and labor, indicating that M&P had not paid them for outstanding debts totaling $110,304.37.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the State contends that, on March 19, 2018, in exchange for amending the bill of information to five counts of misapplication of contractor payments, the defendant agreed to enter pleas of nolo contendere. The State further contends the trial court agreed to accept the pleas and to sentence the defendant to a six-month suspended sentence with two years active, supervised probation on each count, to run consecutively. The State argues the trial court breached the terms of a purported plea agreement by reducing the original sentences that were imposed under that agreement. The State claims that all parties agreed, and the original agreed-upon sentences were a material inducement for the State to amend the bill of information to less serious charges. Noting that courts have long used the principles of contract law in reviewing questions about plea agreements, the State argues that the cause for the amendment of the bill of information has failed and the contract represented by the plea agreement should be nullified. The State contends

---

[4] London's Boarding Home is also referenced as London's Boarding Home, Recreation and Rehab Training Facilities, Inc.

3

that it was injured by said breach and demands either specific performance or nullification of the pleas.

In his appellee brief, the defendant claims that the trial court, when accepting his pleas, reserved the right to modify the terms of his probation pending the outcome of a restitution hearing. He further argues that the trial court made the conditional nature of the probation terms clear, yet again, after it rendered its ruling denying restitution. He notes that immediately after denying restitution, the trial court, in part, stated, "And I don't want to do the sentence today because I want to give it some more consideration, and I want to give everybody a chance to put on evidence about the exact sentence if they want to." As the State did not react to this comment, the defendant contends that all parties were aware that the ultimate terms of probation had been conditioned on the outcome of the restitution hearing.

Louisiana courts generally refer to rules of contract law in determining the validity of plea agreements, while recognizing that a criminal defendant's constitutional right to fairness may be broader than his rights under contract law. *State v. Givens,* 99-3518 (La. 1/17/01), 776 So.2d 443, 455; *State v. Canada,* 01-2674 (La. App. 1 Cir. 5/10/02), 838 So.2d 784, 787. A plea agreement requires the consent of the State and the defendant. *See* La. C.C. art. 1927. Error, fraud, or duress may vitiate consent. La. C.C. art. 1948; *Canada,* 838 So.2d at 786. Where the plea agreement calls for a legal sentence and the trial court agrees, the trial court is bound by the terms of the agreement. *State v. Terrebonne,* 01-2632 (La. App. 1 Cir. 6/21/02), 822 So.2d 149, 152. Under substantive criminal law, there are two alternative remedies available for a breach of a plea agreement: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. *Canada,* 838 So.2d at 788.

At the outset, we note that no agreement as to the defendant's sentence was set forth in the record at the time of the nolo contendere pleas. The transcript of the pleas begins with a general statement by the State as follows, "Your Honor, this is the matter we spoke about. The bill has been amended to reflect five counts of misapplication of contractor payment under Revised Statute 14:202." This statement indicates that a

4

previous conversation regarding the matter apparently occurred, but off the record. Thus, the nature of such a conversation is unknown to this court on review.

Prior to the entry and acceptance of the defendant's nolo contendere pleas, the trial court simply stated, "It's my understanding that you wish to withdraw a prior plea of not guilty, be re-arraigned, and enter pleas of guilty or nolo contendere to five counts of misapplication of payment by a contractor." In imposing the original sentences, the trial court did not indicate that the sentences were in accordance with a plea agreement. The trial court merely stated that the parties agreed that a restitution hearing would be set to "determine the amount of the restitution, if any, and the conditions of any other terms of your probationary period." As the defendant notes in his appellee brief, at the restitution hearing, after ruling that no restitution would be ordered, the trial court stated, without objection or comment, that it was going to "give it some more consideration" and allow evidence to be presented regarding an "exact sentence" to be imposed on a later date.

When the trial court later imposed the amended sentence, which this court ultimately vacated in the original appeal, the State approached the bench. After the bench conference, the trial court stated, "Mr. Hughes [assistant district attorney] has pointed out to me that there may be a discrepancy between some prior discussions about pleas. To that extent, any prior discussion is vacated and the sentence is as I just stated." The trial court added, "And that's based on all the information that I've received in the hearings that we've had since the pleas of nolo contendere were entered." At the State's request, the trial court further stated, "The State's objection to the sentence and my ruling on the prior discussions is noted for the record." However, no additional information or details regarding the basis of the State's objection was noted for the record. Thus, as stated above, no plea agreement was set forth in the record at the time of the nolo contendere pleas, or thereafter.

The party demanding performance of a plea agreement has the burden of proving its existence and the terms thereof. *See State v. Cotton,* 15-1623 (La. App. 1 Cir. 4/15/16), 194 So.3d 69, 79-80; *Canada,* 838 So.2d at 787. After careful review, we find that the record does not with particularity contain evidence of a plea agreement.

*See* La. C.Cr.P. art. 556.1C (prior to 2017 and 2019 amendments). Thus, in this case, the State failed to prove the existence of a plea agreement containing a specific sentence. Accordingly, we find the trial court did not breach a plea agreement. Assignment of error number one lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the State argues the trial court erred by not ordering the defendant to pay restitution as a part of his sentences. The State contends that the uncontested testimony of Lula London, who identified herself as the manager of NJE[5] at the restitution hearing, clearly established the amount misapplied to be $110,304.37. Further, the State notes that La. R.S. 14:202D does not use the term "restitution" to describe the amount that must be paid to a victim. As such, the State argues that the trial court should have used "a different framework" than that found in La. C.Cr.P. art. 883.2, which governs restitution to the victim, to determine the amount due to the victim in this case. The State concludes that, under La. R.S. 14:202D, the defendant is specifically required to pay an amount equal to the sum of the payments not properly applied.

In his appellee brief, the defendant initially argues that the State is precluded from raising the restitution issue on appeal due to its failure to object to the trial court's ruling denying restitution. He further contends that, in any event, the trial court's ruling was sound and reasonable, as the State failed to establish the fact and amount of loss resulting from any actions of the defendant. He notes that Mr. Turner's testimony was stricken after he asserted the Fifth Amendment privilege against self-incrimination and refused to continue testifying during cross-examination by the defense. Further, he contends that Ms. London had little personal knowledge of the course of dealings between Mr. Turner and M&P.

As defendant notes, the State did not object after the trial court's ruling that no restitution would be ordered in this case. Accordingly, the State did not preserve its

---

[5] At the hearing, interchangeable references were made to NJE and LBH, but it is apparent from the record that LBH was the owner and developer of the NJE subdivision. Ms. London testified that she was also the founder, and at one time, was the executive director of LBH, and based on those connections, remained involved with the non-profit organization.

6

objection to the trial court's ruling for appellate review. *See* La. C.Cr.P. art. 841A ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *State v. Morgan,* 10-2253 (La. App. 1 Cir. 6/10/11), 2011 WL 3371536, *2. Although the State later filed a motion for rehearing, the provisions of La. C.Cr.P. art. 841A, which require a contemporaneous objection and the grounds therefor to preserve appellate review of a trial error, were not satisfied. Nonetheless, considering the following, we find no abuse of discretion in the trial court's ruling.

Louisiana Code of Criminal Procedure article 883.2A provides:

> A. In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.

Herein, the defendant pled nolo contendere to five counts of misapplication of payments by a contractor in violation of La. R.S. 14:202, which pertinently provides:

> A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement ... shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
>
>             *        *        *
>
> D. Any person, contractor, subcontractor, or agent of a contractor or subcontractor who knowingly fails to apply construction contract payments as required in Subsection A shall pay to the court, and the court shall transfer to the person whose construction contract payments were misapplied, *an amount equal to the sum of the payments not properly applied and any additional legal costs* resulting from the misapplication of construction fund payments, including a fee charged by the clerk of court for handling such payments. [Emphasis added.]

In ordering restitution, the trial court has discretion and its decision will not be disturbed absent an abuse of this discretion. *State v. Averette,* 99-2054 (La. App. 1 Cir. 6/23/00), 764 So.2d 349, 352; *see State v. LeBlanc,* 10-1281 (La. App. 1 Cir. 2/11/11), 2011 WL 2135106, *3-4.

At the restitution hearing, Mr. Turner testified that he was authorized by LBH's board of directors to execute contracts on LBH's behalf and that he negotiated the contracts at issue. Mr. Turner testified that the contracts for the three houses were for $142,000, $121,500, and $135,500, respectively, which amounts total $399,000. He

7

stated that LBH had paid $318,440.08 of the total sum owed under the contracts to M&P. Under the terms of the contracts, M&P would submit a draw request and LBH would reimburse it for the amount requested. Mr. Turner testified that it was his understanding that once M&P received the funds, it would make payments to the vendors, suppliers, or subcontractors that provided materials and services for houses that were built. Mr. Turner further testified that after LBH paid the draws to M&P, LBH began receiving letters from vendors regarding debts for which M&P had been paid draws to remit. Mr. Turner named four vendors and identified the sums demanded by them as making up the $110,304.37 in restitution being claimed by LBH. Specifically, Mr. Turner confirmed the following list of vendors and the amounts demanded: Zachary Lumber and Hardware Company, LLC - $86,915.70; Cajun Ready Mix Concrete, LLC - $11,109.28; Air Control Heating & Air, LLC - $4,779.79; and CC Electric - $7,500.00.[6]

On cross-examination, defense counsel questioned Mr. Turner regarding whether the contract amounts he identified were the true contract amounts or were the amounts LBH used solely to obtain financing. Mr. Turner testified that he could not recall whether LBH had a limit with its lending bank as to the cost of the houses that were to be constructed. However, Mr. Turner confirmed that Mr. Porche brought to his attention that it would cost more to build the houses than provided in the contracts. During his testimony, Mr. Turner was asked to read aloud a September 10, 2015 email containing the following communication from Mr. Porche to Mr. Turner:

> Mr. Turner,
>
> I am trusting you on this Mr. Turner. The contracts attached are for the "bank only" and the actual difference in the cost we quoted you guys will make up the difference see attached for actual cost.

The email further contains the following response by Mr. Turner:

> Please review page 2 of both contracts. Yes! We will pay the difference. Porche, I told you don't worry about the money. The same for all the 3 homes. I know it's impossible to construct these houses for $42.00 per

---

[6] We observe that the sum of those amounts equals $110,304.77, roughly the figure LBH claimed. According to affidavits and sworn statements of claim or privilege executed by an authorized representative, Air Control Heating & Air, LLC claimed a total of $7,288.93, a higher amount than LBH included in its restitution claim.

sqft and we don't expect you [to]. We just need this to get through to the banks.
Thanks,
George

While Mr. Turner testified that he did not recall the above email, he seemingly agreed that such a conversation could have taken place, specifically stating that they had "several conversations" about M&P's "actual fees" outside of the contract, and that those conversations consisted of "[n]egotiations." As defense counsel attempted to further question Mr. Turner regarding the agreement to pay the difference for the actual cost of building the houses, Mr. Turner responded by attempting to pose a question to defense counsel. The trial court instructed Mr. Turner that he was required to answer questions and could not ask questions. Mr. Turner then requested to "step down." Thereafter, the trial court informed Mr. Turner of and he invoked his Fifth Amendment right against self-incrimination, and the trial court allowed him to step down as a witness.[7]

Ms. London also testified regarding the payments LBH made to M&P. She stated that the amounts remitted to satisfy the demands of the vendors seeking payment actually exceeded the sum being sought in restitution. She explained that LBH was willing to accept the lesser sum, because it was unable to produce proof of the total amount actually paid.

On cross-examination, Ms. London confirmed that she did not personally negotiate the contracts with M&P but stated that she was involved in every aspect. Ms. London stated that, at the time the contracts were entered into, she had no official status as an officer, director, or agent with LBH. Ms. London insisted that she was, however, completely aware of the handling of the agreements. When asked if she was privy to every conversation between Mr. Turner and M&P, Ms. London confirmed that she allowed them to do the negotiating. She added that Mr. Turner would pass on the

---

[7] After Mr. Turner stepped down, one of the defense attorneys asked that Mr. Turner's testimony be stricken, as he was not subject to full cross-examination. The trial court replied, "So ordered." However, we note that a "motion to strike" does not exist in Louisiana criminal law; once a witness has testified, his testimony cannot be removed from the record. *State v. Carter,* 10-0614 (La. 1/24/12), 84 So.3d 499, 521; *State v. Chaisson,* 425 So.2d 745, 748 (La. 1983).

9

paperwork to her, which she would review, further stating, "I totally trust whatever he did."

Mr. Porche testified that he initially quoted Mr. Turner a price of $186,000 for one of the houses to be built, but he knew and the men discussed that amount was "not gonna fly," noting that LBH used a certain amount to obtain grant money for the houses in addition to bank financing. Mr. Porche confirmed with Mr. Turner that LBH would pay the difference in actual costs, in addition to the amounts agreed to in the contracts. Mr. Porche further testified, "We were stupid enough to go into the agreement and believe that he would do what he was going to do." Mr. Porche claimed that LBH was trying to stay under budget to obtain grant money from the Housing Authority. He stated that LBH still owed additional payments to M&P in the amounts of $11,800, $26,000, and $57,000, respectively, on each of the contracts. On cross-examination, Mr. Porche claimed that LBH was taking "money off the top" of the draw payments issued to M&P to pay subcontractors selected by Mr. Turner, which the defendant indicated was the reason why M&P did not pay the claims of Zachary Lumber and Hardware Company, LLC and the other vendors.[8]

Based on the testimony and documents presented, the trial court ruled:

> From the evidence that I have heard it is impossible for me to tell how much the restitution should be because I don't have the whole picture. I don't understand everything that went on between the parties. Some of that has not been put into evidence so I can't tell. It seems to me that what has happened is there wasn't complete reliance on the contracts by the parties for whatever reason. But this is not a civil case. So I can't -- I can't decide that based on the contracts because that's really not at issue...
>
> Therefore, the amount of restitution has not been shown to my satisfaction. There will be no restitution in connection with the sentence.

Our jurisprudence recognizes that contracts may be subsequently modified, abrogated, or revoked by mutual consent of the parties. *See Johnson v. Blue Haven Pools of Louisiana, Inc.,* 05-0197 (La. App. 1 Cir. 2/10/06), 928 So.2d 594, 598. Written contracts for construction may be modified by oral contracts and by the conduct

---

[8] The defendant did not testify at the restitution hearing. Mr. Porche testified that M&P was the defendant's company, and he (Mr. Porche) was neither the owner nor the president of the company. Mr. Porche acknowledged, however, his electronic signature on one of the construction contracts at issue that was presented to him at the hearing. Mr. Porche further confirmed that he generated the contracts along with the defendant and negotiated the terms of the contracts with Mr. Turner.

of the parties, and this is true even when the written contract contains a provision that an owner is liable only if the change orders are in writing. *Bonvillain Builders, LLC v. Gentile,* 08-1994 (La. App. 1 Cir. 10/30/09), 29 So.3d 625, 631.

After reviewing the record, whether we track the specific language of La. C.Cr.P. art. 883.2A or La. R.S. 14:202D, we cannot say the trial court abused its discretion in refusing to order a payment in this case. As noted above, La. C.Cr.P. art. 883.2A requires the court to find an "actual pecuniary loss" or costs incurred by the victim in connection with the case in determining the amount of restitution to be paid to the victim. Under La. R.S. 14:202D, the victim is entitled to an amount equal to the sum of the payments not properly applied. Considering the parole evidence in this case, including the testimony of Messrs. Turner and Porche and the email exchange between them, it is apparent that, by agreement, the parties modified the contractual arrangements. The trial court weighed the credibility of the witnesses and found the original contractual agreements had been modified and that the payment due to the victim(s) herein cannot be determined with certainty. This court will not assess the credibility of witnesses. *Averette,* 764 So.2d at 354. The trial court is not required, nor permitted, to award restitution not supported by the record. *See State v. Ross,* 18-453 (La. App. 3 Cir. 3/13/19), 269 So.3d 1052, 1082, *writ denied,* 2019-00581 (La. 1/22/20), 291 So.3d 1041. Assignment of error number two is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**

11