*JEW*

*WRC by JEW*

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 KA 0246

STATE OF LOUISIANA

VERSUS

MERREL A. PORCHE

JUDGMENT RENDERED:    **DEC 3 0 2020**

* * * * * * *

Appealed from the
Twentieth Judicial District Court
In and for the Parish of West Feliciana • State of Louisiana
Docket Number 16-WFLN-311 • Division B

The Honorable William G. Carmichael, Judge Presiding

* * * * * * *

Samuel C. D'Aquilla
*District Attorney*
Stewart B. Hughes
*Assistant District Attorney*
Haley Major Green
*Assistant District Attorney*
St. Francisville, Louisiana

ATTORNEYS FOR APPELLANT
State of Louisiana

Thomas C. D'Amico
Baton Rouge, Louisiana

ATTORNEY FOR APPELLEE
DEFENDANT—Merrel A. Porche

* * * * * * *

**BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.**

**WELCH, J.**

The State of Louisiana charged the defendant, Merrel A. Porche, by bill of information with residential contractor fraud at a value of one thousand five hundred dollars or more, a violation of La. R.S. 14:202.1(C)(3) (prior to amendment by 2017 La. Acts, No. 281, § 1).[1] He initially pled not guilty, later withdrew his not guilty plea, and subsequently pled *nolo contendere* to five counts of misapplication of payments by a contractor, violations of La. R.S. 14:202.[2] The trial court initially sentenced the defendant to six months in parish jail on each count to be served consecutively, suspended the sentences, and placed the defendant on supervised probation for a period of two years on each count. After a hearing to determine what amount, if any, should be paid in restitution as a condition of probation, the trial court found that the amount of restitution had not been shown to its satisfaction and ruled that no restitution would be ordered in connection with the defendant's sentence. The State filed a motion for rehearing, urging the trial court to reconsider its ruling on restitution. Subsequently, the trial court denied the State's motion for a rehearing, vacated the original sentences, and imposed one sentence of a fine of one thousand dollars plus court costs or a jail term of ninety days in default of payment of the fine.

The State appealed to this court, arguing the trial court erred in resentencing the defendant to terms different from the plea agreement and in ordering no restitution. On appeal, this court vacated the sentence and remanded the case to the trial court for resentencing due to patent sentencing error; specifically, the trial court's failure to impose a separate sentence for each of the five counts in

---

[1] Based on the same circumstances as in this case, the State filed a separate bill of information, similarly charging Brian Moser, and the proceedings were joined below. In the **Moser** case, the State filed a separate appeal in this court raising the same issues raised herein. See **State v. Moser**, 2020-0245 (La. App. 1ˢᵗ Cir. _/_/_), ___ So.3d ___.

[2] At the **Boykin** hearing, the trial court recited a portion of the penalty provision provided under La. R.S. 14:202(C), applicable when the amount misapplied is greater than one thousand dollars.

amending the sentencing. **State v. Porche**, 2019-0278 (La. App. 1st Cir. 9/27/19), 288 So. 3d 802, 804.[3]

On remand, the trial court sentenced the defendant on each count to a fine of one thousand dollars plus court costs or a jail term of ninety days in default of payment of the fine. The trial court further ordered that the sentences run concurrently, with credit for any previous payments. The State now appeals, assigning as error the sentencing and restitution issues raised in its original appeal. The defendant filed an appellee brief, arguing that the State's assignments of error have no merit. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

As the defendant pled *nolo contendere* to each count, there was no trial, and thus, no trial testimony concerning the offenses. The bill of information indicates that, on or about March 7, 2016, the defendant failed to apply the money received under a contract with London Boarding Home ("LBH") to settle claims for material and labor due under the contract. At the restitution hearing, George Turner of LBH testified that in 2015, LBH entered into three builder's contracts with M&P Construction Group, L.L.C. ("M&P"), represented by the defendant and codefendant Brian Moser, to build three homes in New Jerusalem Estates ("NJE"), a residential subdivision in West Feliciana Parish.[4] According to Turner's testimony and documentation presented at the restitution hearing, although LBH paid M&P in accordance with a draw schedule, in March of 2016, LBH began receiving letters from attorneys representing various companies, for unpaid debts that exceed $110,304.37 in total.

---

[3] See also **State v. Moser**, 2019-0277 (La. App. 1st Cir. 9/27/19), 2019 WL 4730228, at *1 (*unpublished*).

3

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the State contends that on March 19, 2018, in exchange for amending the bill of information to five counts of misapplication of contractor payments, the defendant agreed to enter pleas of *nolo contendere*. The State further contends that the trial court agreed to accept the pleas and sentence the defendant to a six-month suspended sentence with two years active supervised probation on each count to run consecutively. The State argues that the trial court breached the terms of a plea agreement by later reducing the sentences originally imposed according to a plea agreement. The State claims that all parties agreed and that the original agreed-upon sentences were a material inducement for the State to amend the bill of information to less serious charges. Noting that courts have long used the principles of contract law in reviewing questions about plea agreements, the State argues that the cause for the amendment of the bill of information has failed and the contract should be nullified. The State contends that it was injured by said breach and demands either specific performance or the nullification of the plea.

The defendant argues that the trial court, when accepting his pleas, clearly reserved to itself the right to modify the terms of probation (and by necessary implication, any concomitant suspended sentence) pending the outcome of a restitution hearing. The defendant further notes that immediately after denying restitution, the trial court, in pertinent part, stated, "And I don't want to do the sentence today because I want to give it some more consideration, and I want to give everybody a chance to put on evidence about the exact sentence if they want to." The defendant avers that the State did not react to the trial court's comment because all of the parties were aware that the ultimate terms of probation had been

---

[4] At the hearing, interchangeable references were made to NJE and LBH, but it is apparent from the record that LBH was the owner and developer of the NJE subdivision.

conditioned on the outcome of the hearing to determine restitution.

In determining the validity of plea bargain agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. **State v. Givens**, 99-3518 (La. 1/17/01), 776 So. 2d 443, 455; **State v. Canada**, 2001-2674 (La. App. 1st Cir. 5/10/02), 838 So. 2d 784, 787. A plea bargain agreement requires the consent of the State and the defendant. See La. C.C. art. 1927. Error, fraud, or duress may vitiate consent. La. C.C. art. 1948; **Canada**, 838 So. 2d at 786. Where the plea agreement calls for a legal sentence and the trial court agrees, the trial court is bound by the terms of the agreement. **State v. Terrebonne**, 2001-2632 (La. App. 1st Cir. 6/21/02), 822 So. 2d 149, 152. Under substantive criminal law, there are two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. **Canada**, 838 So. 2d at 788.

In this case, a sentencing agreement was not set forth in the record at the time of the pleas. The transcript of the *nolo contendere* pleas begins with an abstract statement by the State as follows: "Your Honor, Mr. Porche has amended his bill the same way I did Mr. Moser." The nature or extent of off-the-record plea discussions, if any, are unknown to this court on review. Before the defendant's guilty pleas were entered and accepted, the trial court simply stated, "It's my understanding that you wish to withdraw a prior plea of not guilty and enter a plea of *nolo contendere* to an amended bill of information charging five counts of misapplication by a contractor." When the original sentences were imposed, there was no statement by the trial court, the State, or the defendant to indicate that the

sentences were in accordance with a sentencing agreement.[5]

The party demanding performance of a plea bargain agreement has the burden of proving its existence and the terms thereof. See **State v. Cotton**, 2015-1623 (La. App. 1st Cir. 4/15/16), 194 So. 3d 69, 79-80, writ denied, 2016-0897 (La. 4/24/17), 221 So. 3d 69; **Canada**, 838 So. 2d at 787. Based on our careful review of the record, we find that the record is devoid of evidence of a plea agreement. See La. C.Cr.P. art. 556.1 (prior to 2017 and 2019 amendments). As the State failed to show the existence of a sentencing agreement as a part of any plea bargain, we find no breach of a plea agreement by the trial court in resentencing the defendant. Accordingly, assignment of error number one lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the State argues that the trial court erred in not ordering the defendant to pay a sum of restitution as a part of his penalty. The State contends that the uncontested testimony of Lula London, who identified herself as the manager of NJE[6] at the restitution hearing, clearly established the amount misapplied to be $110,304.37. Further, the State notes that La. R.S. 14:202(D) does not use the term "restitution" to describe the amount that must be paid to the victim. Accordingly, the State argues that "a different framework" than that found in La. C.Cr.P. art. 883.2, which governs restitution to a victim, should have been employed by the trial court to determine the amount due to the victim in this case. The State concludes that pursuant to the language of La. R.S. 14:202(D),

---

[5] The trial court merely set a date for a restitution hearing, noting that the to-be-determined amount of restitution would be in conjunction with any other conditions of probation. Immediately upon the trial court's imposition of the amended sentencing, later vacated by this court, the State approached the bench. Though the State did not directly indicate the basis of its objection, the trial court stated, "Mr. Hughes [assistant district attorney] has pointed out to me that there may be a discrepancy between some prior discussions about pleas. To that extent, any prior discussion is vacated and the sentence is as I just stated." The trial court added, "The State's objection to the sentence and my ruling on the prior discussions [are] noted for the record."

[6] London testified that she was also the founder and, at one time, was the executive director of LBH and, based on those connections, remained involved with the non-profit.

the defendant is specifically required to pay an amount equal to the sum of the payments not properly applied.

The defendant notes that the record does not reflect a contemporaneous objection by the State to the trial court's ruling that restitution would not be ordered in this case and argues the State cannot raise this issue on appeal. He further contends that, in any event, the trial court's ruling was "sound and reasonable." The defendant argues that the only evidence from which to rule was Turner's testimony, which he contends was "nullified" after Turner asserted his right to remain silent. The defendant contends that London had no knowledge or memory of any side deals between him and Turner regarding the true costs of the building venture and how payments would actually be applied. He argues that London only offered her unsupported opinion. He concludes that based on the "meager and problematic" record, the trial court had no choice but to refuse to order restitution in this case.

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.Cr.P. art. 841(A). The defendant is correct in that the State did not object after the trial court's ruling that no restitution would be ordered in this case. Thus, the State is precluded from raising on appeal any error as to the trial court's ruling. See **State v. Morgan**, 2010-2253 (La. App. 1st Cir. 6/10/11), 2011 WL 3371536, at *2 (unpublished). Moreover, as discussed below, we find no merit in the State's challenge of the trial court's ruling.

Pursuant to La. C.Cr.P. art. 883.2(A), "[i]n all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose." Herein, the defendant pled *nolo contendere* to five counts of misapplication of payments by a contractor in

7

violation of La. R.S. 14:202, which provides in pertinent part as follows:

> A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement ... shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
>
> \* \* \*
>
> D. Any person, contractor, subcontractor, or agent of a contractor or subcontractor who knowingly fails to apply construction contract payments as required in Subsection A shall pay to the court, and the court shall transfer to the person whose construction contract payments were misapplied, *an amount equal to the sum of the payments not properly applied and any additional legal costs* resulting from the misapplication of construction fund payments, including a fee charged by the clerk of court for handling such payments.

(Emphasis added). In ordering restitution, the trial court has discretion and its decision will not be disturbed absent an abuse of this discretion. **State v. Averette**, 99-2054 (La. App. 1st Cir. 6/23/00), 764 So. 2d 349, 352.

Herein, at the restitution hearing, Turner testified that he was authorized by LBH's board of directors to execute contracts on behalf of LBH and that he negotiated the contracts at issue. Turner testified that the contracts for the three homes were for $142,000.00, $121,500.00, and $135,500.00, respectively, equaling a total of $399,000.00. He stated that LBH had paid $318,440.08 of the total sum owed under the contracts. Under the terms of the contracts, M&P would submit a draw request, and LBH would reimburse M&P for the amount requested. Turner testified that it was his understanding that once M&P received the funds, it would make payments to the vendors, suppliers, or subcontractors that had provided materials and/or services for the homes that were built. Turner further testified that after draws were paid, LBH began receiving letters regarding debts for which M&P had been paid draws to remit. Turner specifically named four vendors and identified the sums demanded by them as making up the $110,304.37

8

in restitution being claimed by LBH.[7]

On cross-examination, the defense counsel questioned Turner as to whether the contract amounts he testified about were the true contract amounts or were the amounts solely for the purpose of assisting LBH in obtaining financing. Turner testified that he did not recall LBH having a limit with the lending bank as to the cost of the homes that were to be constructed. However, Turner confirmed that the defendant brought to his attention that it would cost more to build the houses than provided in the contracts. Turner was asked to read aloud an email, dated September 10, 2015, containing the following communication from the defendant to Turner:

> Mr. Turner,
>
> I am trusting you on this Mr. Turner. The contracts attached are for the "bank only" and the actual difference in the cost we quoted you guys will make up the difference see attached for actual cost.

The email further contains the following response by Turner:

> Please review page 2 of both contracts. Yes! We will pay the difference. Porche, I told you don't worry about the money. The same for all the 3 homes. I know it's impossible to construct these homes for $42.00 per sqft and we don't expect you too. We just need this to get through to the banks.
> Thanks,
> George

Although Turner testified that he did not recall the above email, he also testified that such a conversation "could have" taken place, that they had "several conversations" about fees outside of the contract, and that those conversations consisted of "[n]egotiations." When the defense counsel attempted to further

---

[7] Turner confirmed the following list of vendors and the amounts demanded: $86,915.70 for Zachary Lumber and Hardware Company, LLC, $11,109.28 for Cajun Ready Mix Concrete, LLC, $4,779.79 for Air Control Heating & Air, LLC, and $7,500.00 for CC Electric. We observe that the sum of those amounts equals $110,304.77, roughly the figure claimed by LBH. According to an affidavit and sworn statement of claim or privilege executed by an authorized representative, Air Control Heating & Air, LLC claimed an additional debt of $2,509.54, not included in the previously listed amount or stated total.

9

question Turner regarding the agreement to pay the difference for the actual cost of building the homes, Turner responded by attempting to question the defense counsel. After the trial court instructed Turner that he was required to answer questions and could not ask questions, Turner stated, "Well, at this time, I'd like to step down as a witness." Turner was then informed of and allowed to invoke his Fifth Amendment right against self-incrimination and stepped down as a witness.

After Turner stepped down, the defense counsel asked that Turner's testimony be stricken, as he was not subject to full cross-examination. The trial court replied, "So ordered." However, we note that a "motion to strike" does not exist in Louisiana; once a witness has testified, his testimony cannot be removed from the record. **State v. Carter**, 2010-0614 (La. 1/24/12), 84 So. 3d 499, 521, cert. denied, 568 U.S. 823, 133 S. Ct. 209, 184 L. Ed. 2d 40 (2012).

London also testified regarding the payments LBH made to M&P. She stated that the amounts remitted to satisfy the demands of the vendors seeking payment actually exceeded the sum being sought in restitution. She explained that LBH was willing to accept the lesser sum because it was unable to produce proof of the total amount actually paid.

London confirmed that she did not personally negotiate the contracts with M&P, though she stated that she was involved in every aspect. London also acknowledged that at the time the contracts were entered into, she had no official status as an officer, director, or agent with LBH. She insisted that she was, however, completely aware of the handling of the agreements. When asked if she was privy to every conversation between Turner and M&P, London confirmed that she allowed them to do the negotiating. She added that Turner would pass on the paperwork to her, which she would review, further stating, "I totally trust whatever he did."

The defendant testified that he initially quoted Turner a price of $186,000.00

10

for one of the homes to be built, but Turner informed him that amount was "not gonna fly," noting that he used a certain amount to obtain grant money for the homes in addition to bank financing. The defendant confirmed with Turner that LBH would pay the difference in actual costs, in addition to the amounts agreed to in the contracts. The defendant further claimed that LBH was trying to stay under budget to obtain grant money from the Housing Authority. He stated that LBH still owed additional payments to M&P in the amounts of $11,800.00, $26,000.00, and $57,000.00, respectively, on each of the contracts. On cross-examination, the defendant claimed that LBH was taking "money off the top" of the draw payments issued to M&P to pay subcontractors selected by Turner, which the defendant indicated was the reason why M&P did not pay the claims of Zachary Lumbar and Hardware Company, LLC and the other vendors.[8]

At the conclusion of the hearing, the trial court ruled:

> From the evidence that I have heard it is impossible for me to tell how much the restitution should be because I don't have the whole picture. I don't understand everything that went on between the parties. Some of that has not been put into evidence so I can't tell. It seems to me that what has happened is there wasn't complete reliance on the contracts by the parties for whatever reason. But this is not a civil case. So I can't -- I can't decide that based on the contracts because that's really not at issue...
>
> Therefore, the amount of restitution has not been shown to my satisfaction. There will be no restitution in connection with the sentence.

Our jurisprudence recognizes that contracts may be subsequently modified, abrogated or revoked by mutual consent of the parties. **Johnson v. Blue Haven Pools of Louisiana, Inc.**, 2005-0197 (La. App. 1st Cir. 2/10/06), 928 So. 2d 594, 598. Written contracts for construction may be modified by oral contracts and by

---

[8] Moser did not testify at the restitution hearing. The defendant testified that M&P was Moser's company and that he (the defendant) was neither the owner nor the president of the company. The defendant acknowledged, however, his signature on one of the construction contracts at

11

the conduct of the parties, and this is true even when the written contract contains the provision that an owner is liable only if the change orders are in writing. **Bonvillain Builders, LLC v. Gentile**, 2008-1994 (La. App. 1ˢᵗ Cir. 10/30/09), 29 So. 3d 625, 631, <u>writ denied</u>, 2010-0059 (La. 3/26/10), 29 So. 3d 1264.

After reviewing the record, whether we track the specific language of La. C.Cr.P. art. 883.2(A) or La. R.S. 14:202(D), we cannot say that the trial court abused its discretion in not ordering a payment in this case. As noted above, La. C.Cr.P. art. 883.2(A) requires the court to find an "actual pecuniary loss" or the costs incurred by the victim in connection with this case in determining the amount of restitution to be paid to the victim. Under the language of La. R.S. 14:202(D), the victim is entitled to an amount equal to the sum of the payments not properly applied. Considering the parole evidence in this case, including the testimony of Turner and the defendant and the email exchange between them, it is apparent that by agreement, the parties modified the contractual arrangements. The trial court weighed the credibility of the witnesses and found the original contractual agreements had been modified and that the payment due to the victim herein cannot be determined with any level of certainty. This court will not assess the credibility of witnesses. **Averette**, 764 So. 2d at 354. The trial court is not required, nor permitted, to award restitution not supported by the record. <u>See</u> **State v. Ross**, 2018-453 (La. App. 3ʳᵈ Cir. 3/13/19), 269 So. 3d 1052, 1082, <u>writ denied</u>, 2019-00581 (La. 1/22/20), 291 So. 3d 1041. Based on the above, we find that assignment of error number two is without merit.

For all of the above and foregoing reasons, the defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**

---

issue that was presented to him at the hearing. He further confirmed that he generated the contracts along with Moser and negotiated the terms of the contracts with Turner.